ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **PR ASSET PORTFOLIO 2013-1 INTERNATIONAL, LLC** DEMANDANTE(S)-APELANTE(S) **v.** **ONE ALLIANCE INSURANCE CORPORATION** DEMANDADA(S)-APELADA(S) | **KLAN202300376** | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de **SAN JUAN** Caso Núm. **SJ2019CV09195 (603)** Sobre: Incumplimiento de Contrato (Seguros) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos; y el Juez Hernández Sánchez.[1]

*Barresi Ramos*, juez ponente

# S E N T E N C I A

En San Juan, Puerto Rico, hoy día 17 de junio de 2025.

Comparece ante este Tribunal de Apelaciones, **PR ASSET PORTFOLIO 2013-1 INTERNATIONAL, LLC** (**PRAPI**) mediante una *Apelación* interpuesta el 28 de abril de 2023. En su recurso, nos solicita que revisemos la *Sentencia* decretada el 16 de noviembre de 2022 por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan.[2] Mediante dicha decisión, el foro *a quo* declaró ha lugar la solicitud de desestimación por insuficiencia de la prueba al amparo de la Regla 39.2 de las de Procedimiento Civil de 2009 presentada el 25 de octubre de 2022 por **ONE ALLIANCE INSURANCE CORPORATION** (**ONE ALLIANCE**); declaró no ha lugar la *Demanda;* y desestimó *con perjuicio*. Asimismo, nos implora que revisemos la *Resolución* emitida el 23 de

---

[1] En virtud de la *Orden Administrativa OATA-2025-019* de 10 de febrero de 2025, el Juez Hernández Sánchez sustituyó a la Jueza Rivera Pérez quien cesó de ejercer funciones en el Tribunal de Apelaciones.

[2] Esta determinación judicial fue notificada y archivada en autos el 18 de noviembre de 2022. Apéndice de la *Apelación*, págs. 5708- 5727.

septiembre de 2022 en la cual se denegó una *Moción de Sentencia Sumaria Parcial* presentada el 25 de mayo de 2022 por **PRAPI**.[3]

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

- I -

El 6 de septiembre de 2019, **PRAPI** entabló una *Demanda* sobre incumplimiento de contrato de seguros en contra de **ONE ALLIANCE**.[4] En su causa de acción, **PRAPI** arguyó que, en el año 2017, como consecuencia del huracán María, varias de sus propiedades aseguradas por pólizas expedidas por **ONE ALLIANCE** resultaron afectadas. Adujo que las partes convinieron fragmentar en tres (3) fases (*Claim Submissions*) su reclamación. Detalló que, para cada una de las fases acordadas, **ONE ALLIANCE** realizó el correspondiente ajuste y oferta de pago, aceptados por **PRAPI**.[5] Empero, tras efectuar dos (2) pagos concernientes con la primera fase, **ONE ALLIANCE** se retractó del ajuste previo, y les divulgó que descontaría de los pagos de las próximas fases unas cantidades que, según estimó, remuneró en exceso.[6] Ello, toda vez que **ONE ALLIANCE** aseguró que **PRAPI** no tenía un interés asegurable sobre ciertas propiedades ajustadas en el 1st *Claim Submission*. Basado en lo anterior, **PRAPI** requirió el pago íntegro de las fases restantes ($770,767.58 en concepto de los 2nd & 3rd *Claim Submissions*), una compensación de $1,000,000.00 por los daños sufridos y $200,000.00 por violaciones al *Código de Seguros de Puerto Rico*.

El 4 de diciembre de 2019, **ONE ALLIANCE** presentó su *Contestación a Demanda*.[7] En síntesis, negó las alegaciones de incumplimiento contractual

---

[3] Este dictamen judicial fue notificado y archivado en autos el 28 de septiembre de 2022. Apéndice de la *Apelación*, págs. 1748- 1770.

[4] Apéndice de la *Apelación*, págs. 1- 18. La *Demanda* fue enmendada el 13 de febrero de 2020, a los efectos de atemperar las alegaciones con las propiedades sitas en el Municipio de San Juan, e incluir la causa de acción en torno a remedios civiles al amparo del Código de Seguros de Puerto Rico. Apéndice de la *Apelación*, págs. 69- 92.

[5] El "*1st Claim Submission*" fue finiquitado por una suma de $280,368.68.

[6] Los pagos fueron satisfechos mediante cheques endosados y depositados.

[7] Posteriormente, el 22 de marzo de 2020, se presentó la *Contestación a Demanda Enmendada*. Apéndice de la *Apelación*, págs. 43- 58; 93- 118.

y sustentó que, según los términos y condiciones de las pólizas, los ajustes estaban sujetos a que posteriormente no surgiera información distinta sobre las propiedades, o se encontrara que hubo ocultación de información esencial. Manifestó que **PRAPI** ocultó información y/o sometió deliberadamente información falsa e incompleta en apoyo de sus reclamaciones. Así pues, **ONE ALLIANCE** insistió que le asistía el derecho a compeler la devolución de los pagos realizados y a negarse a pagar.

Concluido el descubrimiento de prueba, el 25 de mayo de 2022, **PRAPI** presentó una *Moción de Sentencia Sumaria Parcial* en la cual afirmó que no existía controversia sobre el hecho de que **ONE ALLIANCE** había decidido retractarse, unilateralmente y de mala fe, de lo convenido.[8] Enfatizó que **ONE ALLIANCE** no podía retraerse de los ajustes realizados al *1st Claim Submission* y parte del *2nd Claim Submission*, toda vez que no cumplió con las disposiciones del *Código de Seguros de Puerto Rico* y la jurisprudencia aplicable. Para sustentar sus alegatos, **PRAPI** incluyó un documento intitulado *Relación de Hechos Materiales Incontrovertidos Apoyando Solicitud de Sentencia Sumaria* el cual contenía 135 hechos, que según su criterio, estaban incontrovertidos.[9] Por último, interpeló que: (1) se declarara invalida la anulación de las pólizas; (2) se declarara que **ONE ALLIANCE** no podía retractarse de los ajustes y ofertas pactados; (3) **PRAPI** no tenga que devolver suma alguna en relación al pago de $37,713.98 del *1st Claim Submission* a **ONE ALLIANCE**; (4) **ONE ALLIANCE** deberá pagar a **PRAPI** la suma de $770,767.58 del *2nd Claim Submission*; (5) **ONE ALLIANCE** culminara el

---

[8] Apéndice de la *Apelación*, págs. 1290- 1320. Acompañó su escrito con los siguientes legajos: (1) *Anthony Santoro's Sworn Statment in Support of Motion for Partial Summary Judgment*; (2) Deposición del señor Orlando Rivera Cintrón; (3) Deposición del señor Mortimer P. Vélez Monclova; (4) Deposición del señor Víctor Ríos Ríos; (5) Deposición del señor Ricardo Acosta De La Rosa; (6) Póliza de Seguro 75-28-000001258-0 de 07/01/2017 al 07/01/2018; (7) Póliza de Seguro 75-28-000001259-0; (8) Deposición del señor Orlando Rivera Cintrón; (9) Correos Electrónicos; (10) *Draft Claim Submission*; (11) *Sworn Statement in Proof of Loss*; (12) *Statement of Loss*; (13) Cheque #6489 por la cantidad de $2,102,222.24; (14) Cheque #6491 por la cantidad de $20,976.66; (15) Carta 20 de junio de 2019 de **ONE ALLIANCE** a **PRAPI**; (16) Carta de 29 de enero de 2021 de **ONE ALLIANCE** al señor Sam Kirchner; (17) Cheque #5599 de $115,093.00; (18) Cheque #5600 de $166,440.00; (19) *Collateral Inventory* de **PRAPI**; (20) *Form for Prior Notice for Bringing Civil Action Under Section 27.164 of the Insurance Code of Puerto Rico*.
[9] Apéndice de la *Apelación*, págs. 361- 380.

ajuste de las propiedades incluidas en parte del *2nd Claim Submisison* y la totalidad del *3rd Claim Submission*; y (6) se le ordenara a **One Alliance** a pagar la suma que surja de los ajustes de las propiedades incluidas en el *2nd Claim Submission* y *3rd Claim Submission* a favor de **PRAPI**.

Más tarde, el 22 de agosto de 2022, **One Alliance** presentó *Oposición a "Solicitud de Sentencia Sumaria" y "Relación de Hechos Materiales Incontrovertidos Apoyando Solicitud de Sentencia Sumaria"*.[10] En esencia, explicó que había descansado en las representaciones de **PRAPI** como dueña de las propiedades sobre las cuales se generaron las pólizas, pero que durante el descubrimiento de prueba halló que su interés era como acreedor de préstamos garantizados por hipotecas sobre tales propiedades. Agregó que **PRAPI** no incluyó a los dueños registrales en los contratos de seguro. **One Alliance** argumentó que las pólizas en cuestión eran nulas, puesto que **PRAPI** incurrió en fraude al no utilizar el dinero pagado para restaurar las propiedades a la condición en que se encontraban antes del evento catastrófico.

El 23 de septiembre de 2022, se decidió *Resolución* en la cual se denegó la *Moción de Sentencia Sumaria Parcial* por entender que existían hechos materiales en controversia que impedían resolver por la vía sumaria.[11] Así, ordenó la continuación de los procedimientos.

Luego, el 28 de septiembre de 2022, **PRAPI** presentó *Urgente Moción Solicitando Permiso para que Anthony Santoro Testifique por Videoconferencia en el Juicio en su Fondo* en la cual aseveró que el señor

---

[10] Apéndice de la *Apelación*, págs. 1329- 1620. Se anejaron los siguientes documentos: (1) Copia Certificada de la Póliza de Seguro Núm. 75-28-000001258 a favor de **PRAPI** cuyo periodo de efectividad fue: 07/01/2017 al 07/01/2018; (2) Copia Certificada de la Póliza de Seguros; (3) Aviso de Pérdida sometida por **PRAPI** el 2 de octubre de 2017; (4) Copia Acuse de Recibo vía correo electrónico y vía misiva al asegurado; (5) Comprobantes de pérdida bajo juramento por las sumas de $2,102,222.24 y $20,976.66; (6) Cheque por la cantidad de $2,102,222.24 a favor de **PRAPI**; (7) Cheque por la cantidad de $20,976.66 a favor de **PRAPI**; (8) Reportes Mensuales de Propiedades presentados por **PRAPI** a **One Alliance** (23 reportes en formato de Excel); (9) Listado - Tabla del estado de las propiedades remitida por el asegurado en enero del año 2021; y (10) Comprobantes de pérdida bajo juramento por las sumas de $1,459,098.03 y $24,758.56 firmados por el señor Anthony Santoro con fecha del 21 de mayo de 2019.
[11] Esta decisión fue notificada y archivada en autos el 28 de septiembre de 2022. Apéndice de la *Apelación*, págs. 1748-1770.

Anthony Santoro, uno de sus testigos, había dejado de trabajar para esta y se había mudado a Texas, Estados Unidos de América.[12] En ese sentido, y tras describir las dificultades para este testigo viajar a Puerto Rico para prestar testimonio, **PRAPI** procuró que se autorizara al señor Santoro testificar en el juicio mediante videoconferencia. Al día siguiente, 29 de septiembre de 2022, ONE ALLIANCE presentó su *Oposición a "Urgente Moción Solicitando Permiso para que Anthony Santoro Testifique por Videoconferencia en el Juicio en su Fondo".*[13] Expresó que, desde el 2 de junio de 2022, **PRAPI** conocía de la situación laboral del señor Santoro; y obvió atender dicho asunto durante la conferencia con antelación al juicio celebrado el 12 de septiembre de 2022.

El 3 de octubre de 2022, se dictó *Orden* en la cual, en lo pertinente, se comunicó: "[e]n consecuencia, el testigo Anthony Santoro, debe prestar testimonio presencial".[14] En estas circunstancias, el 6 de octubre de 2022, **PRAPI** presentó *Moción Urgente Suspensión de Juicio* en la cual suplicó la suspensión del juicio que se encontraba calendarizado para el día 17 de ese mes.[15] Elucidó que el señor Santoro había informado que no estaría disponible para testificar en el juicio de ninguna forma, presencial o mediante videoconferencia. Asimismo, exteriorizó que el testimonio del señor Santoro era necesario para ilustrar el transcurso de las negociaciones entre las partes y la naturaleza de los acuerdos suscritos, por tal, requirió tiempo para analizar la situación y la manera en que presentaría su prueba. Ante ello, el 7 de octubre de 2022, ONE ALLIANCE presentó *su Oposición a "Moción Urgente Solicitando Suspen[s]ión de Juicio".*[16] El 10 de octubre de 2022, el tribunal primario dictaminó *Resolución* declarando no ha lugar la solicitud de suspensión del juicio.[17] Resaltó que **PRAPI** no había cumplido con la Regla 8.5 de las de Procedimiento Civil de 2009.

---

[12] Apéndice de la *Apelación*, págs. 1771- 1773.
[13] *Íd.*, págs. 1774- 1778.
[14] *Íd.*, págs. 1779- 1780.
[15] Apéndice de la *Apelación*, págs. 1781- 1786.
[16] *Íd.*, págs. 1787- 1789.
[17] *Íd.*, págs. 1795- 1796.

El 12 de octubre de 2022, **PRAPI** presentó *Moción Urgente de Reconsideración de Orden Denegando Moción de Suspensión de Juicio.*[18] No obstante, el 14 de octubre de 2022, se prescribió *Resolución* declarando no ha lugar el petitorio de **PRAPI**.[19]

En desacuerdo con ambas *Resoluciones* —la de 23 de septiembre y la de 10 de octubre de 2022—, **PRAPI** acudió ante este Tribunal de Apelaciones mediante sendas *Peticiones de Certiorari* incoadas los días 13 y 14 de octubre de 2022.[20]

Ulteriormente, el 16 de noviembre de 2022, el Tribunal de Primera Instancia pronunció la *Sentencia* apelada. Esto es, concluido el desfile de la prueba de **PRAPI**, Oɴᴇ Aʟʟɪᴀɴᴄᴇ presentó una solicitud de desestimación por la insuficiencia de la prueba (*non suit*) al amparo de la Regla 39.2(c) de las de Procedimiento Civil de 2009. En consecuencia, se formularon las siguientes determinaciones de hechos:

1. PR Asset Portfolio 2013-1 International, LLC. ("PR Asset"), es una compañía de responsabilidad limitada doméstica con fines de lucro organizada bajo las leyes del Estado Libre Asociado de Puerto Rico. La dirección física de su oficina designada es 15 Ave. Muñoz Rivera, Suite 118, San Juan, Puerto Rico 00901 y la dirección postal es 15 Ave. Muñoz Rivera, 1190, San Juan, Puerto Rico 00901. PR Asset está registrado en el Departamento de Estado con el número de registro 3966.
2. One Alliance Insurance Corporation ("One Alliance"), es una compañía de seguros debidamente autorizada para hacer negocios en Puerto Rico. Su dirección física y postal es: 270 Avenida Muñoz Rivera, 1er Piso, San Juan, Puerto Rico 00918.
3. One Alliance autorizó la emisión de dos (2) pólizas de seguro a favor de PR Asset, con vigencia de 1 de julio de 2017 al 1 de julio de 2018, números 75-28-000001258 y 75-28 000001259.
4. Las pólizas suscritas entre las partes eran "REPORTING".
5. El 20 de septiembre de 2017, el huracán María azotó a Puerto Rico, ocasionando daños.
6. PR Asset sometió a One Alliance una notificación de pérdida por motivo del huracán María el 2 de octubre del 2017.
7. PR Asset contrató los servicios de Affiliated Adjustment Group, Ltd., una firma de ajustadores públicos, para evaluar, estimar y tramitar la referida reclamación ante One Alliance.

---

[18] Apéndice de la *Apelación*, págs. 1797- 1805.
[19] *Íd*., págs. 1925-1926.
[20] Estos recursos recibieron alfanuméricos: **KLCE202201143** y **KLCE202201151**. El 26 de octubre de 2022, se ordenó su consolidación.

8. El 6 de octubre de 2017, One Alliance acusó recibo y le asignó dos (2) números de reclamación: 101630 y 101944.

9. One Alliance designó a la firma de ajustadores Benj. Acosta, Inc., como su ajustador independiente, representante y agente para evaluar, estimar, tramitar y ajustar la reclamación de PR Asset.

10. One Alliance y PR Asset, a través de sus respectivos representantes y ajustadores, acordaron, entre otros asuntos, llevar a cabo inspecciones conjuntas de las propiedades afectadas por el huracán María.

11. One Alliance y PR Asset, a través de sus respectivos representantes y ajustadores, acordaron trabajar la reclamación en tres (3) fases o "claim submissions".

12. El 17 de noviembre de 2017, PR Asset le sometió a One Alliance el 1er "claim submission".

13. El 6 de enero de 2018, PR Asset le sometió a One Alliance el 2do "claim submission".

14. El 17 de abril de 2018, PR Asset le sometió a One Alliance el 3er "claim submission".

15. Mediante comunicación escrita del 9 de mayo de 2018, One Alliance, a través de su ajustador independiente, ajustó la reclamación en cuanto a las primeras 33 propiedades objeto del 1er "claim submission" y ofreció un pago a PR Asset por esas propiedades.

16. El 29 de mayo de 2018, One Alliance, a través de su ajustador, le envió una comunicación escrita a PR Asset en donde ajustó la reclamación en cuanto a las restantes 10 propiedades bajo el 1er "claim submission", y ofreció pagarle a PR Asset por las mismas.

17. Mediante comunicación escrita del 14 de septiembre de 2018, One Alliance ajustó la reclamación y ofreció pagarle a PR Asset las siguientes partidas correspondientes a las 43 propiedades objeto del 1er "claim submission":
    a. $2,753,229.97 por 41 propiedades bajo la Póliza de Seguro 75-28-000001259, y;
    b. $37,036.66 por 2 propiedades bajo la Póliza de Seguro 75-28-000001258.

18. Luego de la aplicación de los correspondientes deducibles, el ajuste, oferta y promesa de pago de One Alliance a PR Asset fue $2,123,198.90 en total, dividido de la siguiente forma:
    a. $2,102,222.24, bajo la Póliza de Seguro 75-28-000001259
    b. $20,976.66, bajo la Póliza de Seguro 75-28-000001258.

19. El 26 de septiembre de 2018, One Alliance emitió los siguientes cheques en pago de lo que correspondía a las propiedades del 1er "claim submission", a saber:
    a. Cheque 6489 por $2,102,222.24; y
    b. Cheque 6491 por $20,976.66.

20. Los referidos pagos fueron aceptados, endosados y depositados por PR Asset.

21. Mediante comunicación escrita del 16 de mayo de 2019, One Alliance envió una oferta a PR Asset por el pago de la denominada 2do "claim submission" incluyendo ciertas propiedades sitas en la Región de San Juan.

22. Luego de la aplicación de los correspondientes deducibles, el ajuste, oferta y promesa de pago de One Alliance a PR Asset respecto al 2do "claim submission" era $1,493,856.59, dividido de la siguiente forma:
    a. $1,469,098.03, bajo la Póliza de Seguro 75-28-000001259
    b. $24,758.56, bajo la Póliza de Seguro 75-28-000001258

23. El 29 de mayo de 2019, PR Asset envió sus Declaraciones de Pérdida o "Proofs of Loss" a One Alliance.

24. El 20 de junio de 2019, One Alliance notificó mediante misiva a PR Asset que se rechazaban las Declaraciones de Pérdidas (POLs) sometidas por la cantidad de $1,469,098.03 y por la cantidad de $24,758.56 relacionada al 2do "claim submission".

25. El 29 de enero de 2021 One Alliance notificó a PR Asset que estaba anulando las pólizas emitidas, por tanto, no se realizó ningún otro ajuste en cuanto al 3er "claim submission" y no se han realizado pagos adicionales al que se realizó del 1er "claim submission".

26. La información de la localización de las propiedades sitas en la Región Judicial de San Juan es la siguiente:
    a. PR 1, Marginal Rd 8838 Km 1.4 St Monacillos Ward, San Juan, Puerto Rico. (1st Claims Submission - 40686)
    b. #4 Ganges St., El Paraíso Dev. El Cinco Sector, San Juan, Puerto Rico. (1st Claims Submission) (40816)
    c. 1005 General Del Valle Street Delicias Development, San Juan, Puerto Rico. (1st Claims Submission - 40954)
    d. 1003 General Del Valle Street Delicias Development, San Juan, Puerto Rico. (1st Claims Submission - 40956)
    e. 1001 General Del Valle Street Delicias Development, San Juan, Puerto Rico. (1st Claims Submission - 40957)
    f. 1901 Cayey St Corner Sagrado Corazón, Santurce Ward, San Juan, Puerto Rico. (1st Claims Submission – 41115)
    g. PR 844 Km 1.3 Cupey Bajo, San Juan, Puerto Rico. (2nd Claims Submission – 30046)
    h. #2262 Ave. Borinquen, Barrio Obrero, San Juan, Puerto Rico. (2nd Claims Submission – 40025).
    i. 1013 Ponce De León Rio Piedras, San Juan, Puerto Rico. (2nd Claims Submission – 40332)
    j. 1015 Ponce De León Rio Piedras, San Juan, Puerto Rico. (2nd Claims Submission – 40333)
    k. 1011 Ponce De León Rio Piedras, San Juan, Puerto Rico. (2nd Claims Submission – 40335)
    l. Los Mirtos Ave. #154, Hyde Park Dev., San Juan, Puerto Rico. (2nd Claims Submission – 40408)
    m. #305 F.D. Roosevelt Avenue, Hato Rey Ward, San Juan, Puerto Rico. (2nd Claims Submission – 41173)
    n. 1007 General Del Valle Street Delicias Development, San Juan, Puerto Rico. (3rd Claims Submission - 40955)

Inconforme, el 5 de diciembre de 2022, **PRAPI** presentó una *Moción Solicitando Reconsideración de la Sentencia Desestimando el Pleito por Insuficiencia de la Prueba* en la cual, en lo pertinente, planteó que: existían

determinaciones de hechos y estipulaciones entre las partes que establecen palmariamente el incumplimiento contractual de **ONE ALLIANCE;** ante la existencia de evidencia no procedía desestimar el caso por ausencia de prueba; y el foro primario abusó de su discreción al otorgar sanciones por asuntos que no estaban bajo su control.[21] El 23 de diciembre de 2022, **ONE ALLIANCE** presentó su *Oposición a "Moción Solicitando Reconsideración de la Sentencia Desestimando el Pleito por Insuficiencia de la Prueba".*[22]

El 10 de enero de 2023, intimamos una *Resolución* mediante la cual desestimamos, por academicidad, las *Peticiones de Certiorari* incoadas por **PRAPI.**

Finalmente, el 24 de marzo de 2023, se dispuso *Resolución* denegando la solicitud de reconsideración presentada el 5 de diciembre de 2022 por **PRAPI.**[23]

Insatisfecho, el 28 de abril de 2023, **PRAPI** acudió ante este Tribunal de Apelaciones por medio de un escrito intitulado *Apelación*, y le imputó el(los) siguiente(s) error(es):

> Erró el foro recurrido al denegar la Moción de Sentencia Sumaria Parcial de PRAPI, pues la aseguradora no cumplió con el peso de su prueba y el derecho sustantivo aplicable establece que los remedios que PRAPI solicitó en la Demanda y en la Moción de Sentencia Sumaria Parcial proceden.
>
> Erró el foro recurrido y violó el debido proceso de ley de PRAPI al denegar cada una de las opciones que brindó PRAPI para poder presentar uno de sus testigos durante el juicio.
>
> Erró el foro recurrido al desestimar el pleito bajo la Regla 39.2 (c) de Procedimiento Civil, pues las estipulaciones y el derecho sustantivo, entre otros factores, establecen el derecho de PRAPI a los remedios que solicitó.

El 3 de mayo de 2023, promulgamos *Resolución* en la cual, entre otras cosas, se le concedió un término de treinta (30) días a **ONE ALLIANCE** para presentar su alegato; y reglamentamos los procedimientos para encauzar de forma rápida la reproducción de la prueba oral. El 5 de junio de 2023, **ONE**

---

[21] Apéndice de la *Apelación*, págs. 5728- 5741.
[22] *Íd*., págs. 5742- 5752.
[23] Fue notificada y archivada en autos el 29 de marzo de 2023. Apéndice de la *Apelación*, págs. 6332- 6338.

**ALLIANCE** presentó su *Oposición a Apelación*. Seguidamente, el 7 de junio de 2023, mediante *Resolución* acogimos la transcripción de la prueba oral de las audiencias celebradas los días 17, 20, 24 y 25 de octubre de 2022 en el caso **SJ2019CV09195**.

Evaluado concienzudamente el expediente del caso, y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

### - II -

### - A - Seguros

En reiteradas ocasiones, nuestro más alto foro ha reconocido que la industria de seguros en Puerto Rico está investida de un alto interés público debido al gran papel que juega en la protección de los riesgos que amenazan la vida o el patrimonio de la ciudadanía.[24] Los seguros cumplen una función social importante al atenuar los riesgos inherentes a las relaciones comerciales mientras que promueven el crecimiento estable de la economía.[25]

Debido a su trascendencia, esta industria ha sido extensamente reglamentada mediante el *Código de Seguros de Puerto Rico* (*Código de Seguros*), conocida como la Ley Núm. 77 de 19 de junio de 1957, según enmendada, y a su vez se encuentra sujeta a las disposiciones del *Código Civil de Puerto Rico de 2020*, de manera supletoria.[26]

En específico, *Código de Seguros* en su Artículo 1.020 define seguro como "el contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo".[27] Así, las personas y los negocios

---

[24] *W.M.M., P.F.M. et al. v. Colegio et al.*, 211 DPR 871 (2023), citando a *San Luis Center Apts. et. al. v. Triple-S*, 208 DPR 824, 831 (2022).
[25] *Íd.*, citando a *Rivera Matos et. al. v. Triple-S et. al.*, 204 DPR 1010, 1019 (2020).
[26] *Íd.*; *Feliciano Aguayo v. MAPFRE*, 207 DPR 138, 148 (2021); 26 LPRA § 101 *et. set*.
[27] 26 LPRA § 101 *et seq.*

pueden proteger sus recursos al transferir el impacto monetario de ciertos riesgos a cambio del pago de una prima.[28]

En conformidad con el *Código de Seguros*, la póliza se describe como el instrumento escrito en que se expresa un contrato de seguro.[29] En otras palabras, los términos que configuran este tipo de acuerdo están expresados en dicho documento.[30]

Por otra parte, en cuanto a la interpretación del contrato de seguros, el propio *Código de Seguros*, implanta como norma de hermenéutica que "[t]odo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta".[31] Nuestro Tribunal Supremo ha resuelto que el contrato de seguros es un contrato de adhesión, pues el asegurador es quien redacta el contrato en su totalidad.[32] Es por esto, que debe interpretarse liberalmente en beneficio del asegurado.[33]

Cuando se produce un suceso incierto previsto en el contrato de seguros, suelen suscitarse controversias.[34] Ante esta realidad, al momento de interpretar las cláusulas, los términos y las condiciones, hay que tener presente que los contratos de seguro – al igual que todos los contratos – constituyen la ley entre las partes y, consecuentemente, obligan.[35] Ante la ocurrencia del suceso incierto previsto en el contrato, el asegurado debe presentar su reclamación y la aseguradora está obligada a resolverla. En particular, el Artículo 27.162 del *Código de Seguros* dispone que la aseguradora debe realizar la investigación, el ajuste y la resolución de la

---

[28] *W.M.M., P.F.M. et al. v. Colegio et al., supra*; *R.J. Reynolds v. Vega Otero*, 197 DPR 699, 706 (2017); *Maderas Tratadas v. Sun Alliance et. al.*, 185 DPR 880, 897 (2012).
[29] 26 LPRA § 1114 (1).
[30] *Íd.*
[31] 26 LPRA § 1125.
[32] *Feliciano Aguayo v. MAPFRE, supra*, pág. 151.
[33] *W.M.M., P.F.M. et al. v. Colegio et al., supra*; *San Luis Center Apts. et. als. v. Triple-S, supra*.
[34] *Feliciano Aguayo v. MAPFRE, supra*, pág. 151; *SLG Francis-Acevedo v. SIMED*, 176 DPR 372, 385- 386 (2009).
[35] *SLG Francis-Acevedo v. SIMED, supra*, pág. 386.

reclamación en el período razonablemente más corto dentro de los noventa (90) días después de la reclamación.[36]

En lo pertinente a la controversia ante nuestra consideración, el paso del Huracán María y los estragos que causó alteraron el modo de vida de los puertorriqueños.[37] Al recibir constantes quejas del consumidor relativas al proceso de reclamo, evaluación de daños y pago por parte de las aseguradoras, el legislador creó la *Carta de Derechos del Consumidor de Seguros*. Esto, con el fin de facilitar que los consumidores conocieran sus derechos fundamentales enunciados en el *Código de Seguros* y su Reglamento.[38] En lo pertinente, expresa lo siguiente:

> "El Consumidor de Seguros de Puerto Rico disfrutará de todos los derechos que le son reconocidos en las leyes y reglamentos que le sean aplicables, incluyendo, pero sin limitarse a los siguientes:
> (a) Derecho a elegir al asegurador e intermediario de seguros de su preferencia.
> [...]
> (e) Derecho a que quien le gestiona su póliza le provea una orientación clara y completa sobre la cubierta, beneficios, límites y exclusiones de la póliza, así como los deberes y obligaciones del asegurado.
> [...]
> (i) **Derecho a que el asegurador actúe de buena fe, de forma justa y equitativa al evaluar y resolver su reclamación**.
> (j) Derecho a que el asegurador **le envíe su oferta con desglose del ajuste para su evaluación, antes de recibir un cheque que usted no ha aceptado, o concurrentemente con el cheque, sin que se entienda que el simple recibo del mismo significa una renuncia a sus reclamaciones**.
> [...]
> (p) Derecho a radicar una **solicitud de investigación** ante el Comisionado de Seguros. [...]"[39] (Énfasis nuestro)

El *Código de Seguros* prohíbe las prácticas desleales y fraudes en el negocio de los seguros.[40] Dentro de sus regulaciones, referente al ajuste de las reclamaciones, el Artículo 27.161 expresa, en lo pertinente, lo siguiente:

> "En el ajuste de reclamaciones ninguna persona incurrirá o llevará a cabo cualquiera de las siguientes prácticas desleales:
> [...]
> (3) Dejar de adoptar e implementar métodos razonables para la rápida investigación de las reclamaciones que surjan bajo los

---

[36] 26 LPRA § 2716b.

[37] Véase, *Exposición de Motivos* de la Ley Núm. 14 de 4 de enero de 2020, mejor conocida como *Ley para añadir un nuevo Artículo 1.120 a la Ley Núm. 77 de 1957, Código de Seguros de Puerto Rico*.

[38] Véase, *Exposición de Motivos* de la Ley Núm. 14- 2020.

[39] Véase, Artículo 1.120 del Código de Seguros, 26 LPRA § 118.

[40] *Comisionado de Seguros v. PRIA*, 168 DPR 659, 671- 673 (2006).

términos de una póliza.

(4) Rehusar pagar una reclamación sin llevar a cabo una investigación razonable basada en la información disponible.

[...]

(6) No intentar de buena fe llevar a cabo un ajuste rápido, justo y equitativo de una reclamación de la cual surja claramente la responsabilidad.

[...]

(13) Negarse a ofrecer una explicación razonable de los términos de una póliza en relación con los hechos y la ley aplicable, para la denegación de una reclamación o de una oferta de transacción.

[...]

(16) Negar el pago de una reclamación válida sólo por la mera sospecha que se cometió fraude o hubo falsas representaciones de hecho.

[...].

El Artículo 27.162 del referido *Código* decreta el término con el que cuentan las aseguradoras para la resolución de las reclamaciones.[41] En lo relativo implanta que:

(1)     La investigación, ajuste y resolución de cualquier reclamación se hará en el período razonablemente más corto dentro de noventa (90) días después de haberse sometido al asegurador la reclamación.

(2)     En el caso de que un asegurador no pueda resolver una reclamación en el término establecido en el inciso (1) de este Artículo, deberá mantener en sus expedientes los documentos que acrediten la existencia de justa causa para exceder el término anteriormente dispuesto.

(3)     El Comisionado en cualquier momento podrá ordenar la resolución inmediata de cualquier reclamación si considera que se está dilatando o retrasando indebida e injustificadamente la resolución de la misma.

Finalmente, el Artículo 27.163 del precitado *Código* prescribe los métodos en que una reclamación de un asegurado se puede resolver.[42] Estas son:

1)     El pago total de la reclamación.

2)     La denegación escrita y fundamentada de la reclamación.

3)     El cierre de la reclamación por inactividad del reclamante cuando el reclamante no coopere o no entregue la información necesaria para que el asegurador pueda ajustar la reclamación. Disponiéndose, que el asegurador notificará inmediatamente al reclamante del cierre de la misma, salvo que en tales circunstancias el cierre será sin perjuicio de permitir nuevamente la presentación de dicha reclamación.

Cuando el asegurador de una póliza escoge cumplir con su obligación **mediante el envío de una oferta razonable al asegurado, dicha oferta**

---

[41] 26 LPRA sec. 2716b.

[42] 26 LPRA sec. 2716c

**constituye el estimado del asegurador de los daños sufridos por el asegurado**.[43] Ello implica que, al emitir un informe, el asegurador está notificando que después de una investigación diligente, un análisis de hechos que dieron lugar a la pérdida, un examen de la póliza y sus exclusiones, y un estudio realizado por el ajustador de reclamaciones del asegurador, se concluye que la póliza cubre ciertos daños reclamados por el asegurado, en las cantidades incluidas en la comunicación.[44]

Jurisprudencialmente, el Tribunal Supremo interpretó que siendo el documento originado por el asegurador el producto de una investigación adecuada y un análisis detenido, este constituye la postura institucional del asegurador frente a la reclamación de su asegurado.[45]

En el caso de *Carpets & Rugs v. Tropical Reps*, se aclaró que:

> Es por esto que, **a un asegurador no se le permite retractarse del ajuste que como obligación envía a su asegurado, salvo fraude de parte del reclamante u otras circunstancias extraordinarias que al asegurador le era imposible descubrir a pesar de una investigación diligente**.[46] Si se permite que un asegurador se retracte de la comunicación que le obliga a emitir el Código de Seguros de Puerto Rico, se circunvalaría el término máximo en el cual un asegurador está obligado a investigar y resolver una reclamación, pues significaría que la resolución no sería final. Dicha práctica causaría incertidumbre en los asegurados, pues el asegurador podría cumplir artificiosamente con el término que le impone el Código de Seguros de Puerto Rico para evitar sanciones por parte del Comisionado y luego desdecirse de los daños estimados originalmente, obligando al litigio de partidas que encontró procedentes inicialmente.[47]

Por lo que, la investigación, ajuste y resolución de reclamaciones por parte del asegurador es un ejercicio sumamente importante que una vez emitido no puede ser retractado salvo que se pruebe fehacientemente un fraude que al asegurador le era imposible descubrir a pesar de tomar todas las diligencias posibles.[48]

---

[43] *Feliciano Aguayo v. MAPFRE*, 207 DPR 138 (2021); *Carpets & Rugs v. Tropical Reps*, 175 DPR 615 (2009). (énfasis nuestro).
[44] *Íd.*, pág. 636.
[45] *Íd.*
[46] (énfasis nuestro).
[47] 175 DPR 615, 636 (2009).
[48] *Íd*, pág. 637.

**- III -**

Al justipreciar el historial judicial, colegimos que tenemos ante nuestra apreciación una controversia que ya ha sido resuelta. Esto es, en el caso **KLCE202201139**, este Tribunal de Apelaciones concluyó que "la reclamación que presentó PRAPI fue dividida en tres etapas. Sobre el *1st and 2nd Claim Submission,* surgió una oferta por parte de One Alliance que fue aceptada por PRAPI. Es norma reiterada que bajo los contratos de seguros las ofertas emitidas por el asegurador son una manera de resolver de forma definitiva una reclamación. Es también norma establecida, que una [a]seguradora no puede retractarse del ajuste que informó al asegurado".[49]

Ante esta decisión, **ONE ALLIANCE** recurrió al Tribunal Supremo y el 14 de abril de 2023, su recurso fue denegado. La carta de mandato fue remitida el 6 de septiembre de 2023 lo cual implica que dicha disputa advino final y firme.

Entre el caso resuelto **KLCE202201139** y este, existe la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. Es decir, nos ocupa la misma causa de acción sobre incumplimiento de contrato de seguro, mala fe y prácticas desleales que surge como secuela de los daños ocasionados por el huracán María, a ciertas propiedades, entre las mismas partes: **PRAPI** y **ONE ALLIANCE**.

Por ende, la decisión contenida en **KLCE202201139,** que puso fin al proceso ante el Tribunal de Primera Instancia, Sala Superior de Caguas, incide directamente en la discordia ante nos toda vez que constituye cosa juzgada. Adoptar otra decisión iría en contravención al derecho afirmado en dicho pleito.

**- IV -**

---

[49] Este caso proviene de un procedimiento iniciado ante el Tribunal de Primera Instancia, Sala Superior de San Juan. Ante el hecho de que las propiedades estaban sitas en distintos municipios, se concertó separar las causas de acción y trasladar conforme la competencia territorial.

Por los fundamentos antes expuestos, *revocamos* la *Sentencia* dictada el 16 de noviembre de 2022 por el Tribunal de Primera Instancia, Sala Superior de San Juan; y, en consecuencia, *ordenamos* a ONE ALLIANCE a cumplir con la oferta, ajuste y promesa de los pagos correspondientes al 2do *"Claim Submissions"* y 3er *"Claim Submissions"* a favor de **PRAPI** por constituir una deuda líquida, vencida y exigible.

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Los jueces Cintrón Cintrón y Hernández Sánchez concurren con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones